UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| GRAINGER FARMS, INC., | Case No. 8:15-bk-4671-MGW |
| JRG VENTURES, LLC, | Case No. 8:15-bk-4672-MGW |
| GRAINGER LAND, LLC, | Case No. 8:15-bk-4673-MGW |
| SAMANN FARMS, LLC, | Case No. 8:15-bk-4674-MGW |
| SAMWES, LLC, | Case No. 8:15-bk-4675-MGW |
| Debtors._____/ | *Jointly Administered under*<br>*Case No. 8:15-bk 4671-MGW* |

**DEBTORS' APPLICATION FOR AUTHORIZATION
TO EMPLOY MURRAY WISE ASSOCIATES, LLC
TO SELL REAL AND PERSONAL PROPERTY**

GRAINGER FARMS, INC. ("**Grainger Farms**"), GRAINGER LAND, LLC ("**Grainger Land**"), JRG VENTURES, LLC ("**JRG**"), SAMANN FARMS, LLC ("**SamAnn**"), and SAMWES, LLC ("**SamWes**") (collectively, the "**Debtors**") by and through its undersigned attorneys, respectfully request the entry of an order authorizing them to Employ Murray Wise Associates, LLC to sell real property owned by SamWes commonly referred to as the Kibler Farm (the "**Application**"). In support of this Application, the Debtors would show:

1. On May 4, 2015 (the "**Petition Date**"), the Debtors filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code.

2. Pursuant to an order of this court dated May 5, 2015, the Debtors' Chapter 11 cases are being jointly administered for procedural purposes only under *In re: Grainger Farms, Inc.*, Case No. 8:15-bk-4671-MGW.

3. Grainger Farms has been engaged in agricultural activities—primarily tomatoes, citrus, and cattle ranching. Grainger Land, SamAnn, SamWes, and James R. Grainger, II, collectively own approximately five thousand (5,000) acres of farm land in Collier, Hendry, and Manatee counties. which is leased to Grainger Farms for agricultural production.

4. SamAnn owns roughly 2,253 acres of real property located in Manatee County, Florida along Highway 64 approximately 20 miles east of Bradenton (the "**Kibler Farm**").

5. James R. Grainger, II ("**Grainger**") owns roughly 1,775 acres of real property in eastern Manatee County (the "**Myakka Farm**").

6. In addition, the Debtors own excess farming equipment and other equipment (the "**Personal Property**").

7. The Debtors have made the business decision that they need to retain the services of professionals to conduct an auction to sell the Kibler Farm. The Myakka Farm may also be sold in the Auction.

8. Subject to Court approval, the Debtors have entered into an agreement (the "**Agreement**") with Murray Wise Associates, LLC ("**MWA**") whose office is located at 1605 South State Street, Suite 110, Champaign, IL 61820, to market the Kibler Farm. A true and correct copy of the Agreement is attached hereto as **Exhibit A** and incorporated herein by reference.

9. In the event that a decision is made to sell the Myakka Farm, a separate engagement letter will be entered into with respect to the Myakka Farm.

10. The Debtors will file a sale motion that will set forth the assets to be sold and allocate the expenses of conducting the auction, if the other parcels are sold.

11. The Debtors and MWA are discussing the possibility of expanding the scope of MWA's services to include additional farms, the sale of the Personal Property, or the sale of the interest in a packing house owned by one of the Debtors. In the event an agreement is reached with MWA as to the listing of other assets, the Debtors will file a separate pleading seeking to expand the scope of the services to be provided by MWA.

12. By this Application, the Debtors seek authorization of this Court to retain and compensate MWA to sell the Kibler Farm in accordance with the Agreement.[1]

13. For its services in connection with the sale of the Kibler Farm, the Debtors desire to pay MWA a sales commission of seven percent (7%) of the gross consideration (as defined in the Agreement)(the **"Real Estate Sales Commission"**) with a minimum commission of $100,000. By this Application, the Debtors further request that the Real Estate Sales Commission due and owing to MWA from the sale of the Kibler Farm be paid from the proceeds received at closing.

14. The Debtors believe that the Real Estate Sale Commission is standard for sales of this type of real and personal property.

15. Any sale of the Kibler Farm by the Debtors to the potential purchaser will be subject to Bankruptcy Court approval.

16. The Debtors also seek approval to reimburse MWA for out-of-pocket expenses as provided for in the Agreement.

17. The Debtors have agreed to indemnify MWA as set forth in paragraph 6 of the Agreement.

---

[1] This attempts to summarize the Agreement, however, in the event of a discrepancy, the terms of the Agreement shall control.

18. By this Application, the Debtors request that this Court enter an order authorizing the Debtors to employ and retain MWA to perform those services described herein.

19. As set forth in the Affidavit of Kenneth Nofziger of MWA attached hereto as **Exhibit B**, MWA does not represent or hold any interest adverse to the Debtors or to the estates with respect to the matters upon which it is to be engaged which would preclude its representation herein, and MWA has no connections with the Debtors, any creditors of the Debtors, any other party in interest, their respective attorneys and accountants, the Office of the United States Trustee, or any person employed in the Office of the United States Trustee. MWA is not a prepetition creditor of the Debtors.

20. The Debtors believe that MWA is well qualified to represent them herein and that their retention is in the best interest of the Debtors and their estates.

WHEREFORE, the Debtors respectfully request that this Court enter its order approving this Application and authorizing the Debtors to employ MWA for the limited purposes set forth in this Application; authorizing the Debtors to pay MWA the commissions set forth herein on the sale of the Kibler Farm with such sale commissions to be paid from the sale proceeds received at closing; and providing such other and further relief as is just and proper.

/s/ Scott A. Stichter
Scott A. Stichter (FBN 0710679)
Susan Heath Sharp (FBN 0716421)
Stichter, Riedel, Blain & Prosser, P.A.
110 Madison Street - Suite 200
Tampa, Florida 33602
(813) 229-0144
sstichter@srbp.com
ssharp@srbp.com
Attorneys for Debtors

5

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the Debtors' Application for Authorization to Employ Murray Wise Associates, LLC to Sell Real and Personal Property has been furnished on this 29th day of May, 2015, by either the Court's CM/ECF electronic mail system, U.S. Mail, or Email to:

Office of the U.S. Trustee

LBR 1007-2 Parties in Interest Matrix

Robert B. Marcus, Esquire
Maksimovich & Associates, P.C.
8643 Ogden Avenue
Lyons, Illinois  60534
marcus@attorneymm.com
Attorney for Murray Wise Associates, LLC

        /s/ *Scott A. Stichter*
        Scott A. Stichter

| | | |
|---|---|---|
| Label Matrix for local noticing<br>113A-8<br>Case 8:15-bk-04671-MGW<br>Middle District of Florida<br>Tampa<br>Fri May 29 17:03:35 EDT 2015 | Crop Production Services, Inc.<br>c/o John H. Mueller, Esquire<br>Clark Mueller Bierley, PLLC<br>102 W. Whiting St., Suite 302<br>Tampa, FL 33602-5114 | Dan Grabhorn<br>Howard Fertilzer & Chemical Company<br>8306 South Orange Avenue<br>Orlando, FL 32809-7853 |
| FLF of Manatee, Inc.<br>Robert A. Soriano<br>Greenberg Traurig, P.A.<br>625 E. Twiggs Street, Suite 100<br>Tampa, FL 33602-3925 | First State Bank of Arcadia -<br>c/o Patti W. Halloran, Esq.<br>Gibbons Neuman<br>3321 Henderson Blvd.<br>Tampa FL 33609-2921 | Ford Motor Credit Company, LLC<br>c/o Brad Hissing<br>PO Box 800<br>Tampa, FL 33601-0800 |
| Jack Queen Construction, Inc.<br>c/o Patricia J. Potter, Esq.<br>Siesky, Pilon & Potter<br>3435 Tenth Street North<br>Suite 303<br>Naples, FL 34103-3815 | Jeff Donaldson<br>Crop Production Services<br>PO Box 275<br>Mulberry, FL 33860-0275 | John A. Tipton<br>Plants of Ruskin, Inc.<br>901 4th Street, NW<br>Ruskin, FL 33570-3511 |
| John P. Bell, Jr.<br>Bell Irrigation Pipe & Supply, LLC<br>1920 Meadow Rook Drive<br>Cairo, GA 39828-2350 | Metropolitan Life Insurance Co.<br>Gary A. Barnes<br>3414 Peachtree Rd. NE Ste 1600<br>Atlanta, GA 30326-1164 | Metropolitan Life Insurance Company<br>c/o Zachary J. Bancroft, Esq.<br>Baker, Donelson, et al.<br>200 S. Orange Avenue, Suite 2900<br>Orlando, FL 32801-3448 |
| Michael W. Sullivan<br>BHN Seed<br>Division of Garguilo, Inc.<br>15000 Old 41 North<br>Naples, FL 34110-8415 | Old Florida Investments, Inc.<br>c/o Robert C. Schermer, Esq.<br>P.O. Box 551<br>Bradenton, FL 34206-0551 | Rabo AgriFinance, Inc.<br>c/o James A. Timko, Esq. and Andrew M. B<br>Shutts & Bowen LLP<br>300 S. Orange Ave., #1000<br>Orlando, FL 32801-5403 |
| T.J. Swaford<br>TriEst Ag Group, Inc.<br>7610 US Highway 41 N.<br>Palmetto, FL 34221-9611 | Taylor & Fulton Packing, LLC<br>c/o Stephenie Biernacki Anthony, Esq.<br>Anthony & Partners, LLC<br>201 N. Franklin Street, Suite 2800<br>Tampa, Florida 33602-5816 | Tommy Parker<br>Coastal Fertilizer & Supply, Inc.<br>209 Adams Avenue E.<br>Immokalee, FL 34142-3529 |
| Triest AG Group, Inc.<br>Barnes Walker, Goethe, Hoonhout, & Perro<br>John K. McIntyre, Esq.<br>3119 Manatee Ave. West<br>Bradenton, FL 34205-3350 | | |


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


| | |
|---|---|
| (u)Note: Entries with a '+' at the end of the<br>name have an email address on file in CMECF<br>------------------------------------------<br>Note: Entries with a '-' at the end of the<br>name have filed a claim in this case | End of Label Matrix<br>Mailable recipients    18<br>Bypassed recipients     1<br>Total                  19 |

# EXHIBIT A



# MURRAY WISE ASSOCIATES LLC

May 28, 2015

James R. Grainger, II
c/o Scott A. Stichter
Stichter Riedel Blain & Prosser, P.A.
110 East Madison Street, Suite 200
Tampa, FL 33602

    Re:    Engagement of Murray Wise Associates, LLC

Dear Mr. Grainger,

This engagement letter (the "Agreement") confirms the understanding and agreement between Murray Wise Associates, LLC ("MWA") and Grainger Farms, Inc. ("Grainger Farms"), JRG Ventures, LLC ("JRG"), Grainger Land, LLC ("Grainger Land"), SamAnn Farms, LLC ("SamAnn"), and SamWes, LLC ("SamWes") (collectively, the "Debtors"), for MWA to provide auction services to the Debtors for the sale (the "Sale") of the Debtors' real property as set forth in attached Schedule "A" (the "Property"), on an exclusive basis, in their pending chapter 11 reorganization cases styled as *In re: Grainger Farms, Inc.* (Case No. 8:15-bk-4671-MGW), *In re: JRG Ventures, LLC* (Case No. 8:15-bk-4672-MGW), *Grainger Land, LLC* (Case No. 8:15-bk-4673-MGW), *SamAnn Farms, LLC* (Case No. 8:15-bk-4674-MGW), *SamWes, LLC* (Case No. 8:15-bk-4675-MGW), jointly administered under Case No. 8:15-bk-4671-MGW (the "Chapter 11 Case") pending before the United States Bankruptcy Court Middle District of Florida Tampa Division (the "Court" or the "Bankruptcy Court"). The Sale shall be conducted in a manner agreeable to the Debtors and MWA and as approved by the Bankruptcy Court.

1. In connection with the Sale, MWA will provide the Debtors with the following services:

   a. Prepare a specialized auction marketing campaign for the Property. Said marketing plan will incorporate the use of brochures, signage, publications, advertisements, mailings, online and social media advertising, a bidder information packet/property information book, a "boots on the ground" campaign, and one or more open house/information day(s).

   b. Solicit interest in the Sale and exert efforts to procure potential bidders that are ready, willing and able to consummate a sale pursuant to the Sale terms ("Potential Purchaser").

   d. Participate in due diligence visits, meetings and consultations with Potential Purchasers and coordinate distribution of information related to the Sale to such parties.

   e. Organize and implement a Sale process with the objective of obtaining the best price and terms for the Sale.

May 28, 2015
Engagement Letter
Page 2 of 9

    f.    Conduct the Sale.

    g.    Testify in and prepare for hearings, requested by the Court or the Debtors, with respect to the Sale.

2.    Debtors acknowledge and agree that in rendering its services hereunder MWA will be using and relying on the information provided by and on behalf of the Debtors without independent verification thereof by MWA and without independent appraisal by MWA of the Property. MWA assumes no responsibility for the accuracy or completeness of any information provided by or on behalf of the Debtors.

3.    If a Sale to a Potential Purchaser, to a party identified as a Potential Purchaser during MWA's engagement hereunder, or with whom Debtors had discussions regarding a Sale during MWA's engagement hereunder, or any of their affiliates, occurs either: (i) during the term of MWA's engagement hereunder or (ii) at any time during the twelve (12) month period following the effective date of termination of MWA's engagement hereunder, Debtors agree to pay MWA a transaction fee ("Transaction Fee") as follows:

    a.    With respect to real property, equal to seven percent (7%) of Consideration (as defined below) involved in the Sale payable in cash concurrently with closing of the Sale. The minimum real property Transaction Fee shall be $100,000. Notwithstanding the forgoing, in addition to the Transaction Fee the Debtors shall also reimburse MWA for out-of-pocket expenses as further described in Paragraph 5 below.

It is expressly understood that, in the event that the final bid(s) is/are not accepted by the Debtors or the Bankruptcy Court, the Sale does not close, or if MWA's engagement is terminated prior to the Sale, MWA will receive a minimum Transaction Fee with respect to the real property equal to $100,000, with any real property Transaction Fees earned from a partial real property Sale credited against this amount and also will be reimbursed for its expenses as further described in Paragraph 5 below.

4.    For purposes of this Agreement:

    a.    "Sale" shall mean any transaction or series or combination of transactions whereby, directly or indirectly, control of a material interest in or any portion of, the Property is transferred for Consideration to (i) any potential Purchaser, or any of their affiliates, any party who is identified as a Potential Purchaser during MWA's engagement hereunder, or any of their affiliates, or (ii) any party with whom Debtors had discussions regarding a Sale during MWA's engagement hereunder, or any of their affiliates.

    b.    "Consideration" shall mean the aggregate value of all cash, securities and other property paid in connection with the Sale, including all indebtedness of the Debtors repaid or assumed, directly or indirectly, (by operation of law or otherwise) in connection with the Sale, the amount of a winning lien holder's credit bid, and any

May 28, 2015
Engagement Letter
Page 3 of 9

    equity or other form of ownership interest retained in or re-invested in the Debtors and/or Property. In the event that the Consideration received in a Sale is paid in whole or in part in the form of securities or other property, then, for purposes of calculating MWA's fees hereunder, the value of such securities or other property shall be the fair market value thereof on the day immediately preceding the consummation of the Sale; provided, however, that if such securities consist of securities with an existing public trading market, the value thereof shall be determined by the average of the last sales prices of such securities on the 30 trading days immediately preceding the consummation of the Sale. If all or a portion of the Consideration payable in connection with the Sale includes contingent future payments, the Consideration related to such payments shall equal the present value of the reasonably expected maximum amount of such payments (as such amount is determined in good faith between Debtors and MWA) using a discount rate of eight percent (8%). If the Consideration to be paid is computed in a foreign currency, the value of such foreign currency, for purposes of calculating MWA's fees hereunder, shall be converted into U.S. Dollars at the prevailing exchange rate on the date on which the Sale is consummated or on the date any contingent or escrowed Consideration is actually paid.

5. Debtors shall reimburse MWA, from time to time upon request, for its reasonable out-of-pocket and incidental expenses including but not limited to travel, meals, lodging, research, advertising, online data room services, reasonable fees and expenses of its outside counsel, public relations, brochure printing, auction site rental, readying the Property for Sale, and other miscellaneous expenses, incurred during the term, and in furtherance, of its engagement hereunder. MWA shall not incur reimbursable expenses in excess of $150,000 without prior approval from Debtors. Unless previously reimbursed, all expenses referred to in this paragraph (5) shall be paid from the proceeds of the Sale or otherwise be paid at the time of closing of any Sale.

6. Debtors shall indemnify and hold harmless MWA, its affiliates and each director, officer, employee, agent, member, manager, controlling person, and attorney of MWA (any or all of the foregoing hereinafter referred to as an "Indemnified Person"), from and against all losses, claims, damages, expenses (including, without limitation, fees and disbursements of attorneys and accountants), costs and liabilities (joint or several), (collectively, "Losses"), resulting directly or indirectly from any threatened or pending investigation, action, claim, proceeding or disputes (whether or not MWA or any other Indemnified Person is a potential or actual named party or witness) (collectively, a "Claim"), which (1) are related to or arise out of any untrue statement or alleged untrue statement of a material fact contained in any oral or written information provided to MWA or any other person by Debtors or used by Debtors in connection with the Sale transaction contemplated by this engagement letter or any omission or alleged omission by Debtors to state therein a material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading, or (2) are otherwise related to or arise out of MWA's engagement, role, activities or the performance or non-performance of professional services on the Debtors' behalf. Debtors will not be responsible, however, for any Losses pursuant to clause (2) of the preceding sentence which are judicially determined to have resulted primarily and directly from the willful misconduct or gross negligence of any Indemnified Person seeking indemnification hereunder; but pending any such judicial determination, the indemnification

May 28, 2015
Engagement Letter
Page 4 of 9

and reimbursement obligations of Debtors hereunder shall continue to apply. Debtor also agree that neither MWA nor any Indemnified Person shall have any liability to Debtors for or in connection with its engagement, except such liability for Losses incurred by Debtors which are judicially determined to have resulted primarily and directly from MWA's willful misconduct or gross negligence. For purposes of the foregoing, "judicially determined" shall mean determined by a court of competent jurisdiction in a final non-appealable judgment on the merits.

7. Except as contemplated by the terms hereof or as otherwise may be necessary for MWA to carry out its obligations hereunder, and except as required by applicable law and regulations or by a governmental authority or court of competent jurisdiction, MWA shall keep confidential all material, nonpublic, proprietary information provided to MWA by Debtors until the earlier to occur of (i) the date three (3) years from the date of this letter agreement or (ii) the date such information shall have been made publicly available by Debtors or others without breach of a confidentiality agreement, and MWA shall further not disclose such information to third parties other than to such of its employees and advisors as MWA determines have a need to know without the consent of Debtors. Notwithstanding the foregoing, the Debtors authorize MWA to disclose confidential information that MWA deems necessary to further the Sale process to any secured lender that has property being sold in the Sale.

8. Except as may be required by applicable law and regulations or by a governmental authority or court of competent jurisdiction, any advice provided by MWA pursuant to its engagement hereunder shall not be disclosed publicly or made available to third parties by Debtors without MWA's written consent having first been obtained.

9. Upon the consummation of a Sale transaction, Debtors agrees MWA has the right to place advertisements in financial and other newspapers and journals at MWA's own expense describing MWA's services to Debtors hereunder.

10. The term of MWA's engagement hereunder shall be twelve (12) months from the date of this letter agreement. Any party hereto may terminate this letter agreement at any time upon ten (10) days' prior written notice to the other party hereto at the address stated herein, without liability or continuing obligation except as set forth in the remainder of this paragraph. Neither the termination of this letter agreement nor completion of MWA's engagement shall affect (i) any compensation earned by MWA up to the date of termination or completion (ii) any compensation to be earned by MWA after termination pursuant to paragraph 4 hereof (iii) the obligation of Debtors to reimburse expenses incurred by MWA up to date of termination or completion or (iv) the other provisions of paragraphs 4 through 10 hereof, inclusive, which provisions shall survive any termination of this Agreement (including by operation of the first sentence of this paragraph). Without limiting the foregoing, MWA shall have the right, in its sole discretion, to terminate this letter agreement if the outcome of its due diligence investigation of the Debtors or the Property is not satisfactory to MWA for any reason and the Debtors shall not be bound for payment of the minimum Transaction Fee as set forth in paragraph 3 above.

May 28, 2015
Engagement Letter
Page 5 of 9

11. Debtors agree that a representative of MWA shall be present at all times during Sale discussions or negotiations or be kept fully informed of all negotiations related to the proposed Sale. Debtors represents to MWA that Debtors has not granted any other person the right to act as a business broker, financial advisor, placement agent or underwriter with respect to the Sale during the term hereof. Until the termination of this letter agreement, the Debtors will not solicit or negotiate with or retain any other business broker, financial advisor, placement agent or underwriter in connection with the Sale.

12. This Agreement shall inure to the sole and exclusive benefit of MWA and Debtors and their respective successors, the indemnified parties hereunder and their respective successors and representatives. The obligations and liabilities under this Agreement shall be binding upon MWA and Debtors.

14. This Agreement shall be governed by and construed in accordance with the laws of the State of Florida without regard to such state's rules conflict of laws. The parties consent to the jurisdiction of the Bankruptcy court to resolve disputes arising under the Agreement.

15. The language contained herein expresses the mutual intent of the parties and no rule of strict construction shall be applied against any party hereto.

16. This letter agreement may not be amended or modified, nor may any provision be waived, except in writing signed by both parties.

17. This letter agreement does not constitute a commitment or undertaking on the part of MWA to provide any financing and does not ensure the successful completion of the Sale. Debtors acknowledges and agrees that (i) MWA is being retained solely to assist Debtors in its efforts to effect a Sale, (ii) MWA is not and shall not be construed as a fiduciary of Debtors and (iii) MWA shall have no duties or liabilities to the equity holders or creditors of Debtors or any other person by virtue of this letter agreement and the retention of MWA hereunder, all of which are hereby expressly waived.

18. This letter agreement is subject to all necessary further Bankruptcy Court approvals, if any.

19. This letter agreement constitutes the entire understanding between the parties and supersedes and cancels any and all prior or contemporaneous arrangements, understandings and agreements, written or oral, between them relating to the subject matter hereof.

If the foregoing correctly sets forth our understanding, please sign and return to us an executed copy of this letter, whereupon this letter shall constitute a binding agreement as of the date first above written.

Sincerely,
MURRAY WISE ASSOCIATES LLC

By: _____
Kenneth A. Nofziger, President

May 28, 2015
Engagement Letter
Page 6 of 9

**AGREED TO AND ACCEPTED BY:**

GRAINGER FARMS, INC.

By: _____     Date: May 28, 2015
    James R. Grainger, II
Its:  President

JRG VENTURES, LLC

By: _____     Date: May 28, 2015
    James R. Grainger, II
Its:  Manager

GRAINGER LAND, LLC

By: _____     Date: May 28, 2015
    James R. Grainger, II
Its:  Manager

SAMANN FARMS, LLC

By: _____     Date: May 28, 2015
    James R. Grainger, II
Its:  Manager

SAMWES, LLC

By: _____     Date: May 28, 2015
    James R. Grainger, II
Its:  Manager

## Exhibit A

<u>SamWes LLC</u>

Approximately 2,253 acres owned by SamWes LLC located in Manatee County, FL referred to as the Kibler Farm. The farm is located along Highway 64 approximately twenty miles east of Bradenton.

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION**
www.flmb.uscourts.gov

In re:
GRAINGER FARMS, INC.              Case No. 8:15-bk-04671-MGW
JRG VENTURES, LLC             Case No. 8:15-bk-04672-MGW
GRAINGER LAND, LLC             Case No. 8:15-bk-04673-MGW
SAMANN FARMS, LLC             Case No. 8:15-bk-04674-MGW
SAMWES, LLC,             Case No. 8:15-bk-04675-MGW
    Debtors.

(Jointly Administered Chapter 11 Cases under **8:15-bk-04671-MGW**)

_____/

## AFFIDAVIT

I, Kenneth A. Nofziger of Murray Wise Associates, LLC ("Murray Wise"), being first duly sworn, and in view of the petition of the Debtors in the above case for employment for services as real estate broker and auctioneer for said Debtors, do make this oath:

1. This Affidavit is given pursuant to Rule 2014 of the Bankruptcy Rules and Section 327 of the Bankruptcy Code.

2. Murray Wise represents no interest adverse to said Debtors or to the estate of the Debtors in any matters upon which we are to be engaged. Murray Wise is a disinterested party as defined in the Code.

3. Except as set forth in this paragraph, no broker employed by Murray Wise presently represents a creditor, equity security holder of the Debtors, general partner, lessor, lessee, party to an executory contract of the Debtors, or person otherwise adverse or potentially adverse to the Debtors or the estates, on any matter, whether such representation is related or unrelated to the Debtors or the estates. Murray Wise has entered into an agreement to sell land owned by James R. Grainger, II in an auction that would be scheduled at the same time as the auction of the Debtors' property.

4. Murray Wise Associates has agreed to the compensation arrangement set forth in the Debtor's Application to Employ Auctioneer.

This 26th day of May, 2015.

MURRAY WISE ASSOCIATES, LLC

By: _____
Kenneth A. Nofziger, President

Sworn to and subscribed
Before me this 26th
day of May, 2015

_____
NOTARY PUBLIC

My Commission Expires: __2/22/2018__

```
OFFICIAL SEAL
JEFFREY T WRIGHT
Notary Public - State of Illinois
My Commission Expires Feb 22, 2018
```